# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIAM WILSON,                    )
                                   )
      Plaintiff,                    )
                                   )
v.                                 )        Case No. CIV-21-728-AMG
                                   )
KILOLO KIJAKAZI, Acting            )
Commissioner of Social Security,   )
                                   )
      Defendant.                    )

## MEMORANDUM OPINION AND ORDER

William Wilson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 9, 10), and the parties have fully briefed the issues. (Docs. 14, 20, 21).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 3, 13). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.     The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History

Plaintiff filed applications for DIB and SSI on January 21, 2020, alleging a disability onset date of October 18, 2018.  (AR, at 84, 85, 259).  The SSA denied the applications initially and on reconsideration.  (*Id*. at 148-54, 155-57, 160-65, 166-70).  Then an administrative hearing was held on January 26, 2021.  (*Id*. at 33-63).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 9-32).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2018, the alleged onset date. (AR, at 14). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of psoriatic arthritis and fibromyalgia.[3] (*Id*. at 15). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.* at 18). The ALJ then determined that Plaintiff had the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). [Plaintiff] can lift 50 lbs occasionally and lift and carry 25 lbs frequently; can sit, stand and walk alternatively for a total of 6 hours each activity out of 8 hours per day; can alternatively reach, push and pull with upper extremities up to 6 hours per 8 hour day; can use hands for alternatively grasping, holding and turning objects up to 6 hours per 8 hour day; and can alternatively climb, stoop, kneel, crouch, crawl, and balance up to 6 hours per 8 hour day.

(*Id.* at 19) (footnote omitted). At Step Four, the ALJ found Plaintiff could perform his past relevant work as security guard and drywaller. (*Id.* at 25). Alternatively, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found Plaintiff "would be able to perform the requirements of representative occupations such as" industrial cleaner, inspector packer, and touch up screener. (*Id.* at 26). Thus, the ALJ found that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. (*Id.* at 28).

---

[3] The ALJ effectively found Plaintiff's obesity was a severe impairment when he found obesity "causes significant limitation in [Plaintiff's] ability to perform basic work activities." (AR, at 15); *see also* 20 C.F.R. § 404.1520(c); 416.920(c) (each defining a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities"). The ALJ also found Plaintiff's depression and anxiety were not severe. (AR, at 16).

**IV.   Claims Presented for Judicial Review**

On appeal, Plaintiff raises two issues.  (Doc. 14).  Plaintiff contends the ALJ erred in his consideration of medical opinions from Dr. Rob Matson, M.D., and Dr. Omar Silvestre, M.D.  (Doc. 14, at 5-8).  He also contends the ALJ did not properly consider Plaintiff's subjective complaints.  (*Id.* at 8-12).

In response, the Commissioner argues the ALJ appropriately considered Dr. Matson's opinion and properly determined Dr. Silvestre's statement did not amount to a medical opinion under the relevant regulations.  (Doc. 20, at 7-12).  The Commissioner also asserts the ALJ properly considered Plaintiff's symptoms.  (*Id.* at 12-15).

**V.   Analysis**

**A.   The ALJ Appropriately Considered Dr. Matson's Opinion and Dr. Silvestre's Statements.**

For the reasons set forth below, the Court finds the ALJ appropriately considered Dr. Matson's Medical Source Opinion of Residual Functional Capacity and Dr. Silvestre's statements on Plaintiff's Physical Disability Parking Placard Application.

**1.   Legal Standards for Considering Opinion Evidence.**

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  An ALJ considers medical opinions using five factors: (1) how much the opinion is supported by objective medical evidence and explanation; (2) the consistency of the opinion with

evidence from other sources in the claim; (3) the medical source's relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(a), (c)(1)-(5); 416.920c(a), (c)(1)-(5). The ALJ must articulate how persuasive he or she finds a medical opinion. *Id.* §§ 404.1520c(b), 416.920c(b). In doing so, the ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). But, the ALJ is not required to explain how he or she considered the remaining factors. *Id.*

### 2.    The ALJ Appropriately Considered Dr. Matson's Opinion.

On May 7, 2020, Dr. Matson completed a Medical Source Opinion of Residual Functional Capacity form, opining that Plaintiff was limited to the following daily: two-to-three hours of any type of combined work on a sustained basis, zero hours of heavy or medium work, two-to-three hours of light work, and four-to-five hours of sedentary work. (AR, at 645). Dr. Matson also found Plaintiff was markedly limited in his ability to perform at a consistent pace without an unreasonable number or length of rest periods and moderately limited in his ability to maintain attention and concentration for extended periods in order to perform simple and detailed tasks, his ability to adhere to a schedule and maintain regular attendance, his ability to work close to others without being distracted, and his ability to handle normal work stress. (*Id.* at 645-46). In support of his assessment, Dr. Matson noted Plaintiff had chronic pain and polyarthritis, psoriatic arthritis attacking multiple joints, and that narcotic medication would affect his reaction time and cognition. (*Id.* at 646).

The ALJ found the opinion was "not persuasive" because:

> [the] checkbox form opinion is inconsistent with his own objective examinations of [Plaintiff] showing [Plaintiff's] resolved mental illness, intact cranial nerves, no focal deficits, normal range of motion, no swelling, no deformity, normal gait, normal sensation and normal motor function. Moreover, this checkbox opinion is inconsistent with the longitudinal evidence including [Plaintiff's] own testimony as to taking care of two children, making meals, continuing to operate and drive automobiles, traveling to Montana via airplane, going shopping, doing household chores, watching television, attending football games, using electronic devices, and taking care of pets.

(*Id.* at 22) (footnote and internal citations omitted).  It is clear the ALJ met his obligation under the regulations – he articulated that he found the opinion was not persuasive and explained how he considered the supportability and consistency factors.  20 C.F.R. §§ 404.1520c.  Plaintiff, however, makes a variety of arguments effectively suggesting the ALJ's reasoning was not supported by substantial evidence.

Plaintiff first argues that the ALJ "mentioned only the mental aspect" of Dr. Matson's opinion, so "it is unclear if the ALJ was even aware of the part of the opinion dealing with [his] physical limitations."  (Doc. 14, at 6).  The ALJ, however, specifically referenced Dr. Matson's opinion that Plaintiff was "unable to perform any medium work." (AR, at 22).  Plaintiff also contends that the ALJ ignored medical records regarding his "joint tenderness/pain."  (Doc. 14, at 7).  But the ALJ acknowledged that "the record contains evidence of widespread pain," and the cited records indicate Plaintiff had pain "all over his body" due to psoriasis and "generalized joint pain."  (AR, at 20, 339, 385, 704). Thus, these arguments are wholly without merit.

Plaintiff next takes on the ALJ's supportability analysis, contending the ALJ's reliance on Dr. Matson's examination findings of intact cranial nerves, no focal deficits, normal range of motion, no swelling, no deformity, normal gait, normal sensation, and normal function are "not inconsistent" with chronic pain and the limitations resulting therefrom. (Doc. 14, at 6). In support, Plaintiff cites *Praytor v. Commissioner, SSA*, an unpublished Tenth Circuit case holding that "none of the evidence [the ALJ] relied upon" – the claimant's gait, limited ability to heel/toe walk, lower extremities strength, sensory function, absence of swelling and deformities, and foot pain relief – "[was] probative of [the claimant's] pain, which was the basis for [the] opinion." 750 F. App'x 723, 727 (10th Cir. 2018). The Court does not find this portion of *Praytor* persuasive. *Praytor* conflicts with another unpublished Tenth Circuit decision in which the court held an ALJ adequately weighed a medical opinion where "the ALJ noted that, contrary to [the] opinion about Gonzales's severe pain, [the doctor's] own observations showed normal gait and normal neurological exam results, and he found that Gonzales exhibited only moderate back pain and a full range of motion in the knee." *Gonzales v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013); *see also Manley v. Berryhill*, 2018 WL 1096870, at *3 (W.D. Okla. Feb. 28, 2018) ("While Plaintiff has often complained of pain, fatigue, and other symptoms stemming from her physical impairments, physical examinations of Plaintiff conducted in 2011 and 2012 were routinely normal, revealing a normal gait and full strength in Plaintiff's upper and lower extremities."). Thus, there is no hard-and-fast rule prohibiting an ALJ from considering a claimant's normal gait and range of motion as evidence contradicting an opinion that a claimant was limited due to pain.

Additionally, in *Praytor*, the court considered the opinion under the treating-physician rule, which required an ALJ give good reasons for not giving a treating physician's opinion controlling weight.  750 F. App'x at 726.  But "the Administration will no longer evaluate whether treating physician opinions are entitled to 'controlling weight,' or give 'good reasons' for the weight given a treating source opinion." *Torres v. Kijakazi*, 2021 WL 4307201, at *3 (D.N.M. Sept. 22, 2021) (comparing 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(b)).  Thus, the ALJ's consideration of the opinion here is subject to less scrutiny than the treating physician's opinion in *Praytor*, as the Court must find only that the ALJ's determination is supported by substantial evidence.  *See, e.g., Frazer v. Kijakazi*, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (finding that an ALJ's explanation of the supportability and consistency factors "must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence") (internal quotation marks, brackets, and ellipses omitted).

Finally, Plaintiff contends the ALJ erred in his analysis of Dr. Matson's assessed mental limitations.  He contends the ALJ "rejected the mental limitations because Dr. Matson indicated that mental illness was resolved," but that Dr. Matson "specifically stated that those limitations were due to the narcotic medication [Plaintiff] was taking."[4]  (Doc.

---

[4] In his reply brief, Plaintiff disclaims any limitations from his mental impairments.  (Doc. 21, at 3) ("[N]either the plaintiff nor Dr. Matson claimed that the mental limitations were caused by mental impairments.").

14, at 7).  Finally, Plaintiff argues that the ALJ erred by not considering the side effects of Plaintiff's medication.  (*Id.*)  However, the ALJ appropriately considered whether Dr. Matson's assessed mental limitations were supported by evidence related to his mental impairments.  While the ALJ did not specifically note that Dr. Matson assessed his limitations in part due to the side effects of narcotics, he thoroughly summarized the two-page report and it is clear the ALJ considered the entire document.  (*See* AR, at 22). Additionally, the ALJ supported his determination with evidence regarding Plaintiff's ability to perform daily activities.  (*Id.*)  For example, Plaintiff's ability to perform activities, such as driving a car,[5] contrasts with Dr. Matson's finding that Plaintiff's reaction time and cognition were limited.  (*Id.*)

Because the ALJ's determination that Dr. Matson's opinion was not persuasive is supported by substantial evidence, the ALJ did not err.  *See Willis v. Kijakazi*, 2021 WL 6197635, at *5 (W.D. Okla. Dec. 30, 2021) ("Given there is substantial evidence in the record to support the ALJ's conclusion that Nurse Ogden's opinion is unpersuasive, the Court will not reweigh the evidence.").

### 3. The ALJ Correctly Found Dr. Silvestre's Statement on Plaintiff's Physical Disability Parking Placard Application Did Not Amount to a Medical Opinion.

The record includes Plaintiff's Physical Disability Parking Placard Application, in which Dr. Silvestre checked a box indicating Plaintiff "is severely limited in his or her

---

[5] Indeed, in another part of the decision, the ALJ found that driving and operating an automobile was an activity showing Plaintiff had only a mild limitation in his ability to concentrate, persist, or maintain pace.  (AR, at 17).

ability to walk due to an arthritic[,] neurological, or orthopedic condition, or complications due to pregnancy."[6]   (AR, at 648).   When asked if Plaintiff's condition would affect Plaintiff's "ability to safely operate a motor vehicle under normal or adverse driving conditions," Dr. Silvestre checked "no."   (*Id.*)  The ALJ addressed the application, stating it "is a disabled parking placard only and not a medical opinion per se and is thus unpersuasive as such."  (AR, at 21).

Plaintiff argues Dr. Silvestre's statement is a medical opinion and the ALJ committed legal error because he did not analyze the opinion in accordance with 20 C.F.R. § 404.1520c.[7]  (Doc. 14, at 8).  However, "the application for a physical disability parking placard signed by Dr. [Silvestre] does not constitute a 'medical opinion' under the regulations."  *Blake v. Kijakazi*, 2022 WL 983169, at *5 (W.D. Okla. Mar. 30, 2022); *see also Moore v. Colvin*, 2014 WL 5765665, at *3 (N.D. Okla. Nov. 5, 2014) ("The court finds that the checking of a box on the application for a parking placard, standing alone, does not qualify as a medical opinion that the ALJ was required to discuss.").  Thus, the

---

[6] Although instructed to "circle appropriate response," Dr. Silvestre failed to do so.  (AR, at 648).

[7] Plaintiff also asserts that the opinion that Plaintiff was severely limited in his ability to walk was consistent with Dr. Matson's opinion and contends it was error not to evaluate it "for supportability and consistency . . . connected with the opinion from Dr. Matson." (Doc. 14, at 8).  Plaintiff cites no law in support of his proposition, and the Court finds it is without merit.

ALJ did not err by declining to analyze the opinion under 20 C.F.R. §§ 404.1520c and 416.920c.[8]

> **B.      The ALJ's Analysis of Plaintiff's Subjective Complaints Does Not Warrant Remand.**

Plaintiff contends the ALJ erred in evaluating his subjective complaints.   When evaluating a claimant's subjective symptoms, an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions.  *See* Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *7.[9]  If

---

[8] In his reply brief, the ALJ argues the ALJ erred by not citing certain evidence from Dr. Silvestre's medical records.  (Doc. 21, at 2-3).  Because Plaintiff raised these arguments for the first time in his reply brief, they are waived.  *See Kruse v. Astrue*, 436 F. App'x 879, 885 n.2 (10th Cir. 2011) ("Arguments presented for the first time in a reply brief are waived.").

[9] "This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis.  *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis.  *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was

they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."  *Id.*  Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence."  *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).  Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide."  *Id.* Furthermore, the ALJ is entitled to resolve evidentiary conflicts.  *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

The ALJ analyzed the intensity, persistence, and limiting effects of Plaintiff's symptoms as follows:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. [Plaintiff's] medical treatment is conservative and limited to monthly medication refills only.  He testified his medications are effective.  He does not use any orthopedic devices.  He is not engaged in any ongoing physical therapy or mental health counseling program.  [Plaintiff's] testimony as to ongoing mental impairments is inconsistent with [Plaintiff's]

_____

consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority."  *Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021).  *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97 n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements.  The analysis, however, remains substantially the same.") (internal citation omitted).

own treating source reporting his mental illness as "resolved." [Plaintiff's] continued engagement in a large number of activities of daily living are inconsistent with allegations of total disability. [Plaintiff's] own testimony under oath (e.g., taking care of two children, making meals, continuing to operate and drive automobiles, traveling to Montana via airplane, going shopping, doing household chores, watching television, attending football games, using electronic devices, and taking care of pets) are inconsistent with allegations expected of one claimant total disability.

(AR, at 24). Plaintiff makes a variety of arguments contesting the ALJ's analysis, most of which can be easily dismissed.

Plaintiff argues that the ALJ's reliance on the medical record was flawed. He asserts he has "consistently seen specialists" for his psoriatic arthritis and related pain, and that his complaints of pain are consistent with "objective observations of joint tenderness." (Doc. 14, at 11). The ALJ, however, cited the record regarding his continued treatment due to psoriatic arthritis and fibromyalgia. (AR, at 20). While Plaintiff asserts "numerous notations of joint tenderness were not even mentioned by the ALJ" (Doc. 14, at 11), the ALJ stated that "the record contains evidence of widespread pain" and cited records noting that Plaintiff had pain "all over his body" due to psoriasis and "generalized joint pain." (AR, at 20, 339, 385, 704). Plaintiff contends the ALJ did not reference his prescriptions for narcotic pain medication "in the context of whether his pain medication was consistent with his allegations." (Doc. 14, at 11). But the ALJ did just that when he stated Plaintiff "testified his medications are effective." (AR, at 24).

Plaintiff also argues the ALJ improperly relied on his conservative treatment. (Doc. 14, at 11). In his reply brief (Doc. 21, at 5), Plaintiff cites *Pickup v. Colvin*, in which the Tenth Circuit noted the ALJ erred in considering the claimant's treatment as conservative

because the record showed that "over time conservative measures failed and extensive treatment, including a daily narcotic pain regimen, became necessary."[10]   606 F. App'x 430, 433 (10th Cir. 2015).   The Court does not find that *Pickup* stands for the proposition that the mere inclusion of narcotic pain medication in a treatment regimen means it is not conservative, as Plaintiff contends.   The "extensive treatment" in *Pickup* did not consist solely of narcotic pain medication.   *Id.*   Here, the ALJ explained the basis of his finding that the treatment was conservative – he specifically noted that Plaintiff's treatment was "limited to monthly medication refills only," that his medications were effective, and that he was not engaged in any ongoing physical therapy.   (AR, at 24).   Because the ALJ explained the basis of his finding that Plaintiff's treatment was conservative – which included Plaintiff's use of medication – the Court finds no error.

Plaintiff additionally contends the ALJ did "not explain how [his] treatment is inconsistent with either [psoriatic arthritis] or [his] complaints." (Doc. 14, at 11).   But the ALJ cited aspects of Plaintiff's treatment he contended were not consistent with Plaintiff's complaints.   (AR, at 24).   Plaintiff also asserts the ALJ erred to the extent the ALJ discredited Plaintiff's allegations because Plaintiff did not undergo "invasive treatment," which "did not match what the ALJ thought was appropriate," and Plaintiff states, without citation to the record, that surgery "was not an option" for treating his pain.   (Doc. 14, at

---

[10] Despite this finding, the court affirmed the ALJ's decision because the credibility "analysis was, on balance, proper and supported by substantial evidence."   *Pickup*, 606 F. App'x at 434.

11).  But the ALJ did not rely on Plaintiff's lack of surgical intervention as a reason for finding the evidence inconsistent with Plaintiff's allegation of symptoms.

Finally, Plaintiff argues the "ALJ's description of [his] activities is a gross misrepresentation of the evidence."   (Doc. 14, at 9).   "[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011).  Further, although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Plaintiff contests the ALJ's characterization of his testimony, "including preparing breakfast for his children, doing laundry, making meals, tak[ing] care of two 40 pound dogs, using a smartphone for Facebook, going grocery shopping every two weeks, going sightseeing in Montana, attending children's football games, and going out to eat." [11]   (Doc. 14, at 9) (citing AR, at 23).  He contends his actual performance of his daily activities was more limited than the ALJ's description.

Portions of this argument are wholly without merit.  Plaintiff contends the ALJ did not consider that his children "are teenagers and do most things themselves" (Doc. 14, at 9), but the ALJ acknowledged that Plaintiff's children were 15 and 16 years old and that

---

[11] Plaintiff similarly contends the ALJ mischaracterized Plaintiff's activities when he "rejected Dr. Matson's opinion because it was inconsistent with 'caring for two children, making meals, continuing to operate and drive automobiles, traveling to Montana via airplane, going shopping, doing household chores, watching television, attending football games, using electronic devices and taking care of pets.'"  (Doc. 14, at 9) (quoting AR, at 11).

17

he wakes them up, makes them breakfast, and helps them with homework.  (AR, at 23).

Thus, the ALJ's finding that Plaintiff took care of his children was not misleading.  Plaintiff

also asserts the evidence related to taking care of two dogs is limited, as he only

occasionally feeds and lets the dogs in and out of the house.  (Doc. 14, at 9) (citing AR, at

48, 263).  But Plaintiff's additional description does not change the accuracy of the ALJ's

finding that Plaintiff was able to take care of his dogs.

Additionally, Plaintiff asserts the ALJ's reliance on his use of electronic devices is

misleading because he rarely looks at his Facebook account and does not text message or

use his phone for email.  (Doc. 14, at 9-10) (citing AR, at 46-47).  Plaintiff testified he

"really hardly use[d]," he used email when "somebody ha[d] to get ahold of" him, and he

did not use the smartphone much.  (*Id.* at 46).  Plaintiff also noted he talked with his family

on his phone "a couple times a week."  (*Id.* at 266).  Based on this evidence, the Court finds

the ALJ did not misrepresent Plaintiff's abilities when he found Plaintiff used electronic

devices and used a smartphone to use Facebook.  Finally, Plaintiff asserts he went to

Montana because his father died, not to go sightseeing.  (Doc. 14, at 10) (citing AR, at 49-

50).  The ALJ's summary of Plaintiff's testimony was that he traveled to Montana via

airplane, stayed with family for a week or more, and went sightseeing while he was there.

(AR, at 23).  The ALJ's description was consistent with Plaintiff's testimony regarding his

activities in Montana.  (*Id.* at 49-50) ("Oh, we went and sightseed it, you know; went and

looked at some stuff a little bit.").

In other areas, however, the ALJ did not properly characterize Plaintiff's

performance of daily activities because Plaintiff asserted he had a limited ability to perform

such activities.  For example, Plaintiff attended his son's sporting events only "when feeling good" and for "short periods of time."[12]  (*Id.* at 266).  Additionally, the ALJ did not address Plaintiff's assertion that he could only perform chores on good days for 15-30 or 10-20 minutes at a time before he has to stop and rest for at least an hour.[13]  (*Id.* at 54-55, 264, 289).  Although the ALJ found Plaintiff went grocery shopping, he did not address Plaintiff's testimony that he "do[esn't] really go grocery shopping" because he "can't go and stay on [his] feet very long," but instead his girlfriend orders groceries online and he goes with her to pick them up sometimes.  (*Id.* at 48).  Further, while the ALJ noted Plaintiff prepared meals, he did not note that Plaintiff made simple meals only once per week and needed help to prepare a meal.  (*Id.* at 264, 289).  Finally, the ALJ did not address Plaintiff's statements that he has about three-to-four bad days per week during which he is in bed all day long and sometimes cannot get up to go to the bathroom.  (*Id.* at 58, 287).  The ALJ also did not reference Plaintiff's statements that he could not shower on some days because of pain and uses a shower chair when he can.  (*Id.* at 263, 288, 293).  Thus, Plaintiff's professed ability to perform daily activities was more limited than the ALJ suggested.

---

[12] Plaintiff also contends that the ALJ improperly relied on the fact that he attended football games because the last time he went to one of his son's sporting events was in 2018.  (Doc. 14, at 9) (citing AR, at 51-52, 266).  But, as the Commissioner accurately argues, Plaintiff's abilities in 2018 are at least partially relevant because the alleged period of disability began on October 18, 2018.  (Doc. 20, at 14; AR, at 12).

[13] Plaintiff contends the type of chores he asserted he could perform – dusting, putting clothes in the washing machine, wiping the counter, sweeping, and changing light bulbs and air filters – should have been denoted by the ALJ because they are limited in nature.  (Doc. 14, at 10).  The Court finds this point of error is without merit – the ALJ correctly categorized such activities as "household chores."

But the ALJ's improper consideration of some of Plaintiff's daily activities does not require remand because the ALJ relied on other substantial evidence in coming to his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the record.[14]  *See Scott v. Berryhill*, 695 F. App'x 399, 406 (10th Cir. 2017) (relying on the ALJ's other findings – which the plaintiff did not challenge – to hold "the ALJ's credibility assessment, while perhaps not perfect, is supported by substantial evidence"); *Marler v. Saul*, 2020 WL 2562812, at *5 (W.D. Okla. May 20, 2020) (finding an "error . . . [was] not reversible because the ALJ gave other good reasons" when the claimant "contend[ed] the ALJ overstated her abilities"); *Cook v. Berryhill*, 2019 WL 1783080, at *3 (W.D. Okla. Apr. 8, 2019) ("[E]ven if the Court agreed with Plaintiff that the ALJ improperly relied on her daily activities when assessing her allegations, any error would be harmless considering the other substantial evidence supporting the ALJ's assessment."), *adopted*, 2019 WL 1781423 (W.D. Okla. Apr. 23, 2019).  Notwithstanding Plaintiff's allegations of error addressed above, the ALJ appropriately relied on Plaintiff's treatment record and medication usage in coming to his determination.

---

[14] To the extent Plaintiff challenges the ALJ's utilization of these daily activities in his assessment of Dr. Matson's opinion, such challenge also fails because the ALJ's analysis is supported by substantial evidence, as noted above.  *See Stansberry v. Berryhill*, 2018 WL 3716315, at *3 (W.D. Okla. Aug. 3, 2018) ("Nevertheless, regardless of whether the opinions of the state agency physicians amounted to good reasons for discounting Plaintiff's complaints with regard to his left upper extremity, the ALJ listed other good reasons for discounting the Plaintiff's reported symptoms.")

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 9th  day of September, 2022.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE